## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

COLUMBUS CHRISTOPHER                         CIVIL ACTION
WILLIAMS JR.

VERSUS                                       NO.  10-1826

HOWARD PRINCE                                SECTION "B"(2)


## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.      FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Columbus Christopher Williams Jr., is incarcerated in the Elayn Hunt Correctional Center in St. Gabriel, Louisiana.[2]  On March 5, 2004, Williams was charged by bill of information in Terrebonne Parish with three counts of terrorizing and five counts of retaliation against a public official.[3]  The Louisiana First Circuit Court of Appeal summarized the facts of the case as follows:

> In 2004, the defendant made a telephone call and wrote letters containing threats to kill or harm numerous Terrebonne Parish elected officials, including District Attorney Joseph L. Waitz, Jr., First Circuit Court of Appeal Judge Edward "Jimmy" Gaidry,[4] 32nd Judicial District Court Judges John Walker and Timothy Ellender, and Terrebonne Parish Sheriff Jerry Larpenter.  In a voice message left on the telephone answering machine of the Terrebonne Parish District Attorney's Office, the defendant threatened to kill the district attorney, the President of the United States of America, and an unnamed 32nd Judicial District Court judge.  In numerous letters written between February 29 and March 5, 2004, and mailed to the district attorney, a reporter at The Houma Daily Courier, and others, the defendant wrote about murder, killing, and holy wars.  One threatening letter included a list of initials, and trial testimony indicated the initials referred to specific people including Terrebonne Parish public officials.  In one letter, the defendant wrote that "flattening or blowing up the courthouse and courthouse annex may cause the death of many children at St. Francis [a school located across the street from the courthouse]."  The defendant also listed (but did not name) his enemies as three of the five judges of the 32nd Judicial District, one court of appeal judge, one or more

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 10, Bill of Information, 3/5/04.

[4]"4. Judge Gaidry, prior to becoming a member of this court (the La. First Circuit), served as a judge in the 32nd Judicial District Court for many years."

persons in the district attorney's office, one or more persons in the sheriff's office, and possibly someone in the clerk of court's office.

Trial testimony revealed that the defendant had pending civil lawsuits against Terrebonne Parish officials, had prior convictions and was serving sentences based on prosecutions initiated by Mr. Waitz's office, that Judges Gaidry, Walker, and Ellender had been the presiding judges in some of the defendant's prior criminal prosecutions, and that the defendant was housed in the Terrebonne Parish jail, which was supervised and maintained by Sheriff Larpenter.  Judge Walker testified that the defendant had personally confronted him in the basement of the courthouse about a situation involving the defendant's bail bonding company.

There was testimony from the victims that the defendant's threats were taken seriously and that they feared for the safety of their families and themselves.  Parish authorities also testified that there was great concern in the community about the threats, and because the defendant was scheduled to be released soon from jail, the public needed to be reassured that an investigation had been undertaken regarding the threats.  Mr. Waitz also testified he had no doubt that the threats were retaliation for his previous prosecutions against the defendant.

The defendant testified that he was advised by his first appointed attorney to write the statements in the letters, that his letters were meant as a joke, that he wrote the letters because he liked to get "under people's skin," that his statements were a result of watching television programs and quoting articles, and that he was planning on writing a book.  He further contended he never had any criminal intent when he wrote the letters.  The defendant called his former attorney as a witness on his behalf, but the attorney denied telling the defendant to make the threats.

State v. Williams, 994 So.2d 155 (La. App. 1st Cir. 2008) (Table); State v. Williams, No. 2008-KA-0648, 2008 WL 4764119, at *1-2 (La. App. 1st Cir. Oct. 31, 2008); State Record Volume 10 of 10, Louisiana First Circuit Court of Appeal Opinion, 2008-KA-0648, pp. 2-4, October 31, 2008.

At the arraignment held on April 19, 2004, Williams entered a not guilty plea and announced that he would represent himself with the assistance of attorney Robert Pastor.[5] The court allowed his then-current appointed counsel to withdraw and notified Pastor of his appointment as Williams counsel.

At a status conference held on May 19, 2004, the prosecutor moved for and was granted appointment of a sanity commission to assess Williams's competence.[6]   On March 23, 2005, the state trial court found that Williams was competent to stand trial and to assist his counsel.[7]

At a hearing held on  June 29, 2005, Williams's counsel requested that Williams be allowed to change his plea from not guilty to not guilty and not guilty by reason of insanity.[8]  The court conducted a competency hearing on August 19 and 25, 2005.[9]  After hearing testimony and receiving records from the psychiatric experts, and after Williams refused to attend one of the hearings, the court found Williams unable adequately to

---

[5]St. Rec. Vol. 1 of 10, Minute Entry, 4/19/04; Motion to Enroll, 4/16/04.

[6]St. Rec. Vol. 1 of 10, Minute Entry, 5/19/04; Trial Court Order, 5/19/04; St. Rec. Vol. 4 of 10, Hearing Transcript, 5/19/04.

[7]St. Rec. Vol. 1 of 10, Minute Entry, 3/23/05; St. Rec. Vol. 4 of 10, Competency Hearing Transcript, 3/23/05.

[8]St. Rec. Vol. 1 of 10, Minute Entry, 6/29/05; Motion for Status Date for Consideration of Change of Plea, 6/22/05; St. Rec. Vol. 4 of 10, Hearing Transcript, 6/29/05.

[9]St. Rec. Vol. 1 of 10, Minute Entry, 8/19/05; Minute Entry, 8/25/05; St. Rec. Vol. 4 of 10, Hearing Transcript, 8/19/05; St. Rec. Vol. 4 of 10, Hearing Transcript, 8/25/05.

assist his counsel and ordered that Williams be re-evaluated at the Southeast Louisiana Mental Health Systems Forensic Facility in Jackson, Louisiana.[10]

At a follow-up hearing held on March 23, 2006, counsel stipulated that the forensic doctors agreed that Williams was competent,[11] the court found Williams competent.  At the same hearing, the court considered Williams's motion to be allowed to act as his own counsel.[12]  The court ruled that Williams could represent himself with Mr. Pastor's assistance.  Based on his pleadings and statements to the court, the court also found Williams in contempt of court, and he was sentenced to serve seven (7) days in jail consecutive to any other sentence.

On January 17, 2007, the court heard argument on another motion to determine counsel filed by the prosecutor.[13]  After some discussion, the court ruled that Williams would be allowed to represent himself without the assistance of counsel or he could

---

[10]St. Rec. Vol. 1 of 10, Competency Hearing Minutes, 8/25/05; Trial Court Order, 9/1/05.

[11]St. Rec. Vol. 1 of 10, Minute Entry, erroneously dated 3/23/05 (3/23/06); Competency Report, 1/10/06; St. Rec. Vol. 4 of 10, Status Hearing Transcript, 3/23/06; St. Rec. Vol. 8 of 10, Sanity Commission Evaluation, 12/16/05.

[12]St. Rec. Vol. 1 of 10, Minute Entry, erroneously dated 3/23/05 (3/23/06); Motion to Allow Defendant to Act as Own Counsel, 2/3/06.

[13]St. Rec. Vol. 1 of 10, Minute Entry, 1/17/07; St. Rec. Vol. 3 of 10, Motion to Determine Counsel, 1/3/07; Motion to Appear Pro Se and Allow Appointed Counsel to Withdraw, 1/11/07; Trial Court Order, 1/17/07; St. Rec. Vol. 5 of 10, Hearing Transcript, 1/17/07.

remain represented by Mr. Pastor.  Williams chose to represent himself and the court released Mr. Pastor as counsel.[14]

At the motion and contempt hearings held on February 23 and March 21, 2007, Williams represented himself.[15]  At the first hearing, Williams again asked that he be provided with counsel who would assist him, while he acted as lead counsel.  The court denied his requests and held him in contempt for use of inappropriate language in his pleadings.  He was sentenced to serve six months in parish jail.

At the March 21, 2007, hearing, the court again held Williams in constructive contempt for language used in his correspondence dated February 18, 2007.[16]  The court deferred sentencing.  The court again denied Williams's motion for determination of standby counsel and several other pretrial motions.

Williams, representing himself, was tried before a jury on April 16 through 19, 2007, and was found guilty as charged on all eight counts.[17]  The state trial court

---

[14]St. Rec. Vol. 1 of 10, Minute Entry, 1/17/07; Trial Court Order, 1/17/07.

[15]St. Rec. Vol. 1 of 10, Minute Entry, 3/21/07; St. Rec. Vol. 5 of 10, Contempt Hearing Transcript, 2/23/07; Contempt Hearing Transcript, 3/21/07.

[16]Id.

[17]St. Rec. Vol. 1of 10, Trial Minutes (4 pages), 4/16/07; Trial Minutes (3 pages), 4/17/07; Trial Minutes (2 pages), 4/18/07; Trial Minutes (2 pages), 4/19/07; Jury Verdict Forms, 4/19/07; St. Rec. Vol. 5 of 10, Trial Transcript, 4/16-19/07; St. Rec. Vol. 6 of 10, Trial Transcript (continued), 4/16-19/07; St. Rec. Vol. 7 of 10, Trial Transcript (continued), 4/16-19/07; St. Rec. Vol. 8 of 10, Trial Transcript (continued), 4/16-19/07.

sentenced Williams on May 2, 2007, to serve consecutive sentences of 15 years on each of the three terrorizing counts and five years on each of the five retaliation counts.[18]  The court also ordered that these sentences be served before the contempt sentences previously ordered.

On direct appeal, Williams's appointed counsel[19] argued that the state trial court erred in permitting Williams to act as his own attorney and in denying Williams assistance of counsel, without having conducted a hearing to determine Williams's competence to act as his own attorney.[20]  Williams filed a pro se supplemental brief in which he argued three grounds for relief:[21] (1) His prosecution based on private letters to the district attorney violated his First Amendment rights. (2) He was not read his Miranda warnings when he was arrested between March 5 and 8, 2004, and the letters and notes written after his arrest should not have been used against him. (3) His rights to access to the courts and equal protection were violated when the state clerk of court did not open his mail and instead forwarded it the prosecution.

---

[18]St. Rec. Vol. 1 of 10, Sentencing Minutes, 5/2/07; St. Rec. Vol. 8 of 10, Sentencing Transcript, 5/2/07.

[19]The same attorney, Frank Sloan, also represents Williams in this federal habeas corpus proceeding.

[20]St. Rec. Vol. 10 of 10, Appeal Brief, 2008-KA-0648, 6/23/08.

[21]St. Rec. Vol. 10 of 10, Supplemental Appeal Brief, 08-KA-0648, 7/20/09; 1st Cir. Order, 2008-KA-0648, 8/1/08.

While his appeal was pending, Williams filed several pleadings with the state trial court seeking post-conviction relief and a new trial.[22]  The court denied relief in light of the pending appeal.[23]  His request for review of these orders was eventually denied by the Louisiana First Circuit Court of Appeal.[24]

In the meantime, on October 31, 2008, the Louisiana First Circuit Court of Appeal affirmed Williams's convictions and sentences, finding that Williams had unequivocally demonstrated his desire to act as his own counsel and knowingly and intelligently waived the right to counsel.[25]  The court also found no merit in Williams's pro se arguments regarding the First Amendment and the admission of evidence, and the court refused to consider the denial of access to courts and equal protection allegation for lack of a factual basis.

The Louisiana Supreme Court denied Williams's subsequent writ application without stated reasons on June 19, 2009.[26]  Williams's conviction became final 90 days

---

[22]St. Rec. Vol. 10 of 10, Document dated 7/4/08; Document dated 7/10/08; Uniform Application for Post-Conviction Relief, dated 7/14/08.

[23]St. Rec. Vol. 10 of 10, Trial Court Order, 7/14/08; Trial Court Order, 8/7/08.

[24]St. Rec. Vol. 10 of 10, 1st Cir. Order, 2008-KW-1612, 11/10/08.

[25]State v. Williams, 994 So.2d at 155; State v. Williams, 2008 WL 4764119, at *10; St. Rec. Vol. 10 of 10, 1st Cir. Opinion, 2008-KA-0648, 10/31/08.

[26]State v. Williams, 10 So.3d 732 (La. 2009); St. Rec. Vol. 10 of 10, La. S. Ct. Order, 2008-K-2842, 6/19/09; La. S. Ct. Letter, 2008-K-2842, 12/3/08 (showing postmarked by counsel on 12/1/08).

later, on September 17, 2009, when he did not file a writ application with the United States Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

On October 9, 2009, Williams submitted an application for post-conviction relief to the state trial court raising the following grounds for relief:[27] (1) He requests a new trial with appointed counsel. (2) He never received his Miranda warnings. (3) He received an excessive sentence. The state trial court denied relief on November 10, 2009, finding that the claims were raised and rejected on appeal, citing La. Code Crim. P. art. 930.4(A).[28]

On February 20, 2010, Williams submitted a motion requesting that an evidentiary hearing be held in his criminal case.[29]  The court denied the request, finding that no procedural mechanism existed to grant relief.[30]

Williams submitted another application for post-conviction relief on February 24, 2010, alleging that he was not formally arrested and apprised of the charges against him

---

[27]St. Rec. Vol. 10 of 10, Uniform Application for Post-Conviction Relief, dated 11/10/09.

[28]St. Rec. Vol. 10 of 10, Trial Court Order, 11/10/09.

[29]St. Rec. Vol. 10 of 10, Motion for Evidentiary Hearing, dated 2/20/10.

[30]St. Rec. Vol. 10 of 10, Trial Court Order, 3/25/10.

and that he was not given his <u>Miranda</u> warnings.[31]  The court denied relief, finding the petition repetitive and successive under La. Code Crim. P. art. 930.4.[32]

## II.    FEDERAL HABEAS PETITION

On June 25, 2010, counsel filed Williams's petition for federal habeas corpus relief in this court, alleging that Williams was denied his Sixth Amendment right to representation by counsel.[33]  Counsel argues that Williams never agreed to waive his right to counsel and there was never a hearing to determine his competence to represent himself at trial.[34]

The State filed an opposition in response to the petition, arguing that Williams made a knowing and intelligent decision to act as his own lawyer, and that the claim is without merit, citing the reasons given by the state appellate court.[35]  Williams's counsel submitted a reply to the State's opposition, arguing that Williams made no such waiver

---

[31]St. Rec. Vol. 10 of 10, Uniform Application for Post-Conviction Relief, dated 2/24/10.

[32]St. Rec. Vol. 10 of 10, Trial Court Order, 5/10/10.

[33]Rec. Doc. No. 1, p.2.

[34]Rec. Doc. No. 1, p.3.

[35]Rec. Doc. No. 8.

of his right to counsel and that no hearing was conducted to determine his competence to represent himself.[36]

III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[37] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Williams's petition, which was filed by counsel on June 25, 2010.

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).  The State has not raised, and the record does not support, these defenses to review of the merits of Williams's petition.

---

[36]Rec. Doc. No. 9.

[37]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

11

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)),  aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> Court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts.  Under the
> "unreasonable application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93;

Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the state court decision applied [a

Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting

Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone,

535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the

only question for a federal habeas court is whether the state court's determination is

objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert.

denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to

show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25);

Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

IV.   RIGHT TO COUNSEL

Williams alleges that he was denied counsel without a knowing and intelligent

waiver and without the state trial court having determined his competence to represent himself at trial.  These arguments were first raised by counsel on direct appeal to the Louisiana First Circuit.

In its ruling, the Louisiana First Circuit relied on <u>Faretta v. California</u>, 422 U.S. 806 (1975), and related state and federal law to find that Williams was advised of the implications of his decision to represent himself and that Williams demonstrated an unequivocal desire to represent himself.  The court examined the record and determined that, although Williams was not opposed to assistance from stand-by counsel, he made clear his desire to be lead counsel in his case.  The court also found that the state trial court had sufficient information to assess Williams's competence and background in connection with his decision to represent himself.  The court, therefore, held that Williams knowingly and intelligently waived his right to counsel.

Williams's claim presents this court with two issues: (a) whether the state trial court made a determination that he was competent to represent himself at trial, and (b) whether Williams knowingly waived his right to counsel.  As to the first issue, Williams fails to state a cognizable claim upon which federal habeas corpus relief may be granted.

Williams argues that he was not mentally competent to act as his own attorney. He contends that competency to stand trial is not the same as competency to defend

14

oneself in proper person.[38]  The United States Supreme Court, however, has made clear that "even assuming that self-representation might pose special trial-related difficulties, 'the competence that is required of a defendant to waive his right to counsel is the competence to *waive the right*, not the competence to represent himself.'" (emphasis in original) Indiana v. Edwards, 554 U.S. 164, 172 (2008) (quoting Godinez v. Moran, 509 U.S. 389, 399 (1993)).  The level of competence required to waive the right to counsel is the same as that required to stand trial.  Godinez, 509 U.S. at 399.  In this case, Williams was found competent to stand trial, and he was thus also competent to represent himself.

The Supreme Court has repeatedly held that a defendant's "'technical legal knowledge' is 'not relevant' to the determination whether he is competent to waive his right to counsel . . ." Godinez, 509 U.S. at 400 (quoting Faretta, 422 U.S. at 836).  The Court has "emphasized that although the defendant 'may conduct his own defense ultimately to his own detriment, his choice must be honored.'" (citation omitted) Id., at 400 (quoting Faretta, 422 U.S. at 834).  Thus, Williams's ability actually or effectively to act as his own lawyer was not a determinative factor in the state court's assessment of his competence to waive the right to counsel.  "[A] criminal defendant's ability to

---

[38]Rec. Doc. No. 9, p.6.

represent himself has no bearing upon his competence to *choose* self-representation."
(*emphasis in original*) Id.

For these reasons, Williams has not established that the state trial court was
constitutionally required to determine his competence to represent himself at trial,
beyond having gone through the procedure resulting in the finding  that he was
competent to stand trial.  The state courts' denial of relief on this claim was not contrary
to, or an unreasonable application of, Supreme Court precedent.

As to the second issue, the question is whether Williams knowingly and
intelligently waived his right to counsel with the benefit of the hearing required by
Faretta v. California, 422 U.S. 806 (1975) (holding criminal defendants have
constitutional right to self-representation, and when accused manages own defense such
that he invokes that right, he must knowingly and intelligently forgo his right to counsel
and be made aware of dangers of self-representation).  The state courts' finding that
Williams knowingly and intelligently waived his right to counsel and chose to represent
himself is fully supported by the record, and he is not entitled to relief for the following
reasons.

A criminal defendant has the constitutional right to waive his right to counsel and
present his own defense.  Faretta, 422 U.S. at 817-22; United States v. Long, 597 F.3d
720 (5th Cir. 2010).  Waiver of that right must be knowing and intelligent, and the

16

defendant must clearly and unequivocally request self-representation.  <u>Long</u>, 597 F.3d at 723. Once a defendant unequivocally invokes the right of self-representation, whether expressly or constructively, the court must hold a <u>Faretta</u> hearing to ensure that the defendant's request to proceed without counsel is knowing and voluntary.  <u>See</u> <u>Faretta</u>, 422 U.S. at 835-36; <u>United States v. Cano</u>, 519 F.3d 512, 516 (2008).  A <u>Faretta</u> warning is required if the defendant, either expressly or constructively, unequivocally invokes his right to proceed pro se and waives his right to counsel.  <u>See</u> <u>Cano</u>, 519 F.3d at 516; <u>see also</u> <u>Long</u>, 597 F.3d at 724.

The Supreme Court, however, has not "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel."  <u>Iowa v. Tovar</u>, 541 U.S. 77, 88 (2004).  The trial court need only be convinced that "he knowingly and intelligently forgoes his right to counsel and that he is able and willing to abide by rules of procedure and courtroom protocol." <u>McKaskle v. Wiggins</u>, 465 U.S. 168, 173 (1984). The defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with his eyes open.'"  <u>Faretta</u>, 422 U.S. at 835 (quoting <u>Adams v. United States ex rel. McCann</u>, 317 U.S. 269, 279 (1942)).

The trial judge may look at the particular facts and circumstances of a case, "including the defendant's education or sophistication, the complex or easily grasped

nature of the charge, and the stage of the proceeding," to determine whether a defendant made a knowing and intelligent waiver of counsel.  Tovar, 541 U.S. at 88.  Furthermore, although a defendant possesses both the right to counsel and the right to self-representation, there is no constitutional right to have both through a "hybrid representation" scheme, such as standby counsel.  See McKaskle, 465 U.S. at 182.

As mentioned previously, the level of competence required to waive the right to counsel is the same as that required to stand trial.  Godinez, 509 U.S. at 399.  Finally, whether a defendant expressly or constructively asserts an unequivocal request for self-representation is a factual determination.  Long, 597 F.3d at 723-24; Cano, 519 F.3d at 516.

As an initial matter, the record is clear that Williams was found competent to stand trial.  It follows then, that he was competent to waive his right to counsel and proceed on his own behalf.  Dunn, 162 F.3d at 308.

Williams's  challenge in this federal habeas case appears premised on the argument that the trial court did not engage in the Faretta process to determine whether Williams made a knowing and voluntary waiver.  The state court record is filled with

instances in which Williams, his appointed counsel and the prosecutor asserted that Williams had chosen to represent himself.[39]

At a hearing held on June 29, 2005, Williams's appointed counsel, Robert Pastor, advised the state trial court that Williams wrote to say that he did not want to talk to Pastor anymore.[40]   The court addressed the issue later in the hearing, and Williams announced, "I'm prepared to be my attorney.  I don't want Mr. Pastor, and I want a jury trial."[41]  The court noted that it believed Williams was able to read the law and educated enough to proceed on his own.  The court, however, decided that it would withhold a decision on allowing Williams to represent himself until after completion of the competency determination.[42]

At the continuation of the competency hearing on August 19, 2005, the court reiterated that if "Mr. Williams is found competent and able to represent himself, then Mr. Pastor is out and Mr. Williams is in."[43]  Williams also objected to the State's motion to prevent him from filing pleadings pro se and insisted that "under the United States

---

[39]See, e.g., St. Rec. Vol. 4 of 10, Competency Hearing Transcript, p. 4, 3/23/05 (by prosecutor "I have problems with whether Mr. Pastor is the attorney in this case, or whether the defendant is acting [pro se] with the advice being provided to him by Mr. Pastor.")

[40]St. Rec. Vol. 4 of 10, Hearing Transcript, p. 6, 6/29/05.

[41]Id., p. 15.

[42]Id., pp. 18-19.

[43]St. Rec. Vol. 4 of 10, Hearing Transcript, p. 7, 8/19/05.

Federal Constitution, under the Sixth Amendment, I'm allowed to represent myself and file motions."[44]

At the same hearing, both Dr. Gregg Hunter and Dr. Hien Tran testified that, while Williams suffered from bipolar disorder, he understood the charges and proceedings against him and was most likely capable of assisting counsel with a defense.[45]  However, the doctors recognized that Williams needed long-term mental health treatment and that his behavioral responses were unpredictable.  Williams thereafter insisted that he be allowed to testify and the court withheld its ruling to allow this.[46]

On August 25, 2005, the court called the matter for hearing to allow Williams to testify with regard to the competency determination.[47]  The court was advised by jail officials that Williams refused to be transported to the hearing.[48] Based on the record and Williams's  inconsistent behavior to that point, the court held that Williams was not capable of assisting with his defense in his current state.[49]  The court ordered that

---

[44]Id.

[45]Id., pp. 13, 14, 30, 33.

[46]Id., pp. 39-40.

[47]St. Rec. Vol. 4 of 10, Hearing Transcript, p. 2, 8/25/05.

[48]Id., p. 3.

[49]Id., pp. 6-7.

Williams be transferred to the Southeast Louisiana Mental Health Forensic Facility in Jackson, Louisiana, for further evaluation and treatment before the case could proceed.[50]

After receiving follow-up evaluation reports on Williams, the court conducted a status conference on March 23, 2006.[51]  Counsel stipulated that, if the doctors were called, they would testify that Williams was competent.[52]  After finding Williams competent, the following exchange took place with the court:[53]

> MRS. CULLEN:    I think the next issue, Your Honor, again, based on conversations with Mr. Pastor, is Mr. Williams desires to represent himself.
>
> THE COURT:    Is that what your desire is, Mr. Williams?
>
> MR. WILLIAMS:    To be chief counsel representing myself under the United States Sixth Amendment.

Williams also agreed that he would represent himself and that Pastor could assist him as needed.[54]  Pastor thereafter appeared on Williams's behalf at two other hearings held on July 26, 2006, a motion hearing at which Williams did not appear, and on

---

[50]Id., p. 8.

[51]St. Rec. Vol. 4 of 10, Status Conference Transcript, 3/23/06; see also, St. Rec. Vol. 8 of 10, Sanity Commission Evaluation, 12/16/05; St. Rec. Vol. 1 of 10, Competency Report, 1/10/06.

[52]Id., p. 3.

[53]Id., p. 6.

[54]Id., p. 8.

October 9, 2006, a preliminary hearing at which Williams was present.[55]  At the second hearing, Pastor made the following statement with regard to Williams's continued filing of pro se pleadings without consulting him:[56]

> MR. PASTOR:  Well, I feel that we've already addressed that issue before when Mr. Williams at one point wanted to be his own attorney and then withdrew that.  I think, as an officer of the court, I'm obliged to try to keep some restraints on what's going on.

After that hearing, the prosecution filed a motion to clarify the status of Williams's counsel, which was heard by the state trial court on January 17, 2007.[57] Earlier, Williams had distributed written pleadings in which he called Pastor incompetent and ineffective and claimed to have fired Pastor.[58]  At the hearing, Pastor offered to withdraw to allow Williams to represent himself.  Pastor also advised the court that ". . . Mr. Williams is intelligent enough to understand what going pro se means . . . he knows how to do

---

[55]St. Rec. Vol. 4 of 5, Hearing Transcript, 7/26/06; Hearing Transcript, 10/9/06.

[56]St. Rec. Vol. 4 of 5, Hearing Transcript, p. 43, 10/9/06.

[57]St. Rec. Vol. 5 of 10, Hearing Transcript, p. 2, 1/17/07.

[58]Id., pp. 2-5.

research in the law, and know which cases are against his favor."[59]  The court further

discussed the matter with Williams:[60]

> BY THE COURT:
> Q.   [. . .] Mr Williams,  do you want Mr. Pastor to represent you; yes or
> no?
>
> A.   Absolutely not.
>
> Q.   Okay.  Well, then we crossed that hurdle.  So I will allow Mr. Pastor
> to be relieved as your lawyer.  Now, do you think it would be wise
> for me to appoint what is referred to as standby counsel; you know
> what standby counsel is?
>
> A.   I understand what standby counsel is, but it's not within my
> discretion to decide what you can do and can't do.
>
> Q.   No, I understand that, what's in my discretion or what is in your
> discretion.  So I'm asking you, if I do that are you going to complain
> I guess is my question?
>
> A.   It depends on who the attorney or whether he communicate with me.
>
> Q.   Well, it would be a competent attorney as we do in all cases such as
> this.
>
> A.   Judge, the only  – I'm going to be honest with you, the only thing I
> need an attorney for is just two parts, the attorney can do the picking
> of the jury, because I'm not interested in picking any jury.  I don't
> have that time to waste.  Secondly, the attorney can cross-examine
> me, because I will testify.  But beyond that I do not need an attorney
> for anything else, because Mr. Pastor was more interested in putting
> on a defense for me.  I'm not interested in putting on the type of

---

[59]Id., p. 6.

[60]Id., pp. 7-8.

> defense he's interested in putting on, because I knew what took place, and he didn't have any idea what took place . . .
>
> . . .

Q.     My question is simple. You feel like you want to represent yourself.

A.     I will represent myself.

The court went on to find that Pastor was a competent, experienced criminal defense attorney and that it was Williams's choice to remove Pastor from the case. The court then removed Pastor from the case and allowed Williams to represent himself.[61] The court indicated that it would consider appointing the indigent defender program as standby counsel.[62]

Nevertheless, after further discussions with counsel and Williams in court and counsel off the record, the court directed that Williams would represent himself without standby counsel:[63]

> Back on the record on this case, all right this is somewhat of a unique situation. We don't often have a defendant in a criminal matter so vehemently fighting for the right to represent himself. But we have indeed that situation in State versus Williams. The Court is overwhelmed by the want, desire, and passion by Mr. Williams to want to represent himself. He has taken steps to indeed persuade the Court overwhelmingly that he does not want Mr. Pastor to represent him. I'm convinced. So I want to make sure Mr. Williams understands that you can't have your cake and eat it, too. It's going to either be with Mr. Pastor as your lawyer, or you're going to be

---

[61] Id., p. 9.

[62] Id., pp. 9, 16-18.

[63] Id., pp. 22-23.

representing yourself by yourself, no lawyer, no standby counsel, for the entirety of the remainder of this case, including but not limited to selection of a jury, the voir dire process, opening statement, questioning of witnesses, cross-examination, closing arguments, and before the trial the pretrial motions, submission of witness list, exhibit list and so forth. So if you stand prepared to do that by yourself, you can so choose.  That's what I'm hearing you telling me you want to do.  But I want to make sure we are perfectly clear, you can't have both.  So you can either have you by yourself representing yourself, or you're going to have Mr. Pastor as your lawyer standing on the side of your [sic] representing you.  So those are your choices.

Williams repeatedly responded that he would be his own "chief counsel," but that the court would have to decide whether he would have standby counsel, something he did not oppose.[64]   The court repeated that there would be no standby counsel, and Williams acknowledged "[t]hat's left up to the courts, that's left up to you."[65]

Williams later requested assistance of counsel at the contempt hearing held on February 23, 2007, while insisting that he would remain "main counsel" and "chief counsel."[66]   The state trial court denied his request and reminded Williams that three doctors had already found that he was competent.[67]   Williams again argued that he was willing to accept standby counsel.

---

[64]Id., p. 23-25.

[65]Id., p. 25.

[66]St. Rec. Vol. 5 of 10, Contempt Hearing Transcript, p. 3, 2/23/07.

[67]Id., p. 5.

At the next contempt and motion hearing held on March 21, 2007, Williams again asked for assistance of standby counsel for purposes of the contempt hearing, which the court denied.[68]  With regard to his motion to revisit the issue of counsel for trial, Williams conceded that he had  already been told that he would not receive standby counsel.[69]

At the pretrial hearing held on April 9, 2007, one week before trial, the trial judge had a similar exchange with Williams, who again reiterated that he did not want Pastor to represent him.[70]  Williams indicated that he wanted standby counsel to assist him; however, he again did not wish to have Pastor represent him.[71]  He also recognized that he was not in a position to pick and choose who his lawyer would be.[72]

After further discussion, Williams and the court had the following exchange regarding counsel:[73]

> MR. WILLIAMS:  As I said, Judge, I only have two things.  I want the assistance of counsel, and I will put on absolutely no defense because I'm not a professionally trained

---

[68]St. Rec. Vol. 5 of 10, Contempt Hearing Transcript, pp. 4-5, 3/21/07.

[69]Id., p. 15.

[70]St. Rec. Vol. 10 of 10, Motion Hearing Transcript, pp. 3-5, 4/9/07.

[71]Id., p. 4.

[72]Id., p. 6.

[73]Id., p. 21.

|                    | attorney at law through no university.  And I have no degree in the professional law field.  And without an attorney, I will put on no defense. |
|--------------------|-----------|
| THE COURT:         | Well, as a matter of fact, I though that one time you told me that the only reason you wanted an attorney was to help pick a jury.  But you didn't want anybody to help you otherwise. |
| MR. WILLIAMS:      | Well, I didn't say otherwise, I said pick a jury.  But I have never picked a jury. |
| THE COURT:         | Because you said you didn't have enough time to pick a jury. |
| MR. WILLIAMS:      | Picking a jury is quite different from just talking.  So I have never picked a jury.  Whether an attorney want to help me pick one or not, I will put on no defense.  Whether it's a jury or no jury. |

On the morning of trial, April 16, 2007, the court and Williams had the following exchange about standby counsel:[74]

|                    |           |
|--------------------|-----------|
| THE COURT:         | All right, Mr. Williams, do you have anything that you want to put on the record or any housekeeping chores? |
| MR. WILLIAMS:      | Only one thing. |
| THE COURT:         | Yes, sir. |
| MR. WILLIAMS:      | I do not waive all my constitutional rights to have an attorney. |

---

[74]St. Rec. Vol. 5 of 10, Trial Transcript, pp. 15-17, 4/16-19/07.

THE COURT:          Well, okay, I'm glad you brought that up once again, Mr. Williams, because we have afforded you the services of an attorney, but you didn't want him.

MR. WILLIAMS:   It's not that I didn't want him.  Way back in 2000 and – 2000 – 2004 I sent motions to this court that Mr. Pastor was not doing anything for me, was not doing the job, and told my family he thought I was guilty and I should plead insanity.  So this court was put on notice or warning in 2004 that there was a major conflict between Mr. Pastor and myself.  In fact, the Court did not get it.  It's left up to someone between the Clerk's Office, the D.A.'s Office and Mrs. Cullen. But I told the Clerk on at least seven to ten times it was a major problem.

THE COURT:          Okay, Mr. Williams, I once again hear your argument, but again, the Court provided you a free attorney pursuant to our Constitution in the cases that have come within the last fifty years or so.  We have provided you a free attorney at absolutely no cost to you, and you didn't like this particular attorney, although this attorney –

MR. WILLIAMS:   I never said I didn't like him.

THE COURT:          Wait, wait, one second, I'm not finished.  A trained, skilled professional with years of experience in criminal defense.  We provided that to you for free at the taxpayers' cost, and this Court is not going to allow you to pick your own attorney at the expense of the taxpayers.  So that's about all that I have to say about that, and since you have chosen not to have Mr. Pastor represent you, as per your request that you made to this Court several weeks ago, I will allow you to represent yourself.  Okay. . . .

As determined by the state courts, the record establishes that Williams was competent to proceed to trial, and therefore competent to waive his right to counsel. The trial court discussed and considered with counsel and with Williams his education and his mental state before accepting the waiver the first time. The court discussed with Williams on several occasions the complexities of the tasks he was undertaking, for both pretrial and at trial, if he chose to represent himself. In addition, Williams was admonished on several occasions that he would be expected to follow the local rules and rules of procedure and evidence. Williams's statements to the court at each hearing in which he was involved reflected that he had more than a general knowledge of the law and proceedings and was able to make his arguments known to the court.

The record is clear that the trial court was "overwhelmingly" convinced that Williams knowingly and intelligently waived his right to counsel and also that he was able to represent himself. This is all that was required to meet constitutional standards regarding the waiver. See McKaskle, 465 U.S. at 173. The considerations and warnings by the state trial court over the long course of these proceedings were more than sufficient to satisfy the Faretta requirements. Accord Smith v. Dretke, No. 05-CV-1229, 2006 WL 1951161, at *4 (N.D. Tex. July 13, 2006). Thus, the record supports the factual determinations made by the state courts that Williams made a free and voluntary waiver of his right to counsel and the clear and unequivocal choice to represent himself.

Moreover, it is settled in this circuit that "[a] defendant's refusal without good cause to proceed with able appointed counsel constitutes a voluntary waiver of that right." Richardson v. Lucas, 741 F.2d 753, 757 (5th Cir. 1984); Dunn v. Johnson, 162 F.3d 302, 307 (5th Cir. 1998). The state trial court made findings that Pastor was a qualified and experienced trial lawyer who had effectively represented Williams's interest in the proceedings. There is nothing in the record to suggest otherwise, and Williams has not argued to the contrary in this court. Thus, his stubborn refusal to accept Pastor's able assistance further constituted a valid waiver of the right to counsel.

The record also demonstrates that Williams vacillated on his desire to proceed with or without standby counsel in the final few hearings and on the morning of trial. His requests for standby counsel were repeatedly denied by the state trial court based on his rejection of and prior lack of cooperation with Pastor. Williams's last minute requests for standby counsel did not invalidate or call into doubt the veracity of his clear, earlier waiver or his decision to proceed on his own behalf. Williams had no constitutional right to the assistance of standby counsel after choosing to proceed as his own counsel. See McKaskle, 465 U.S. at 182. The state court's denial of his requests for standby counsel, therefore, did not violate the Constitution.

30

Williams has not demonstrated that the state courts' denial of relief was contrary to, or an unreasonable application of, Supreme Court law.  Williams is not entitled to relief on his claim that he was denied the right to counsel.

**RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that the petition of Columbus Christopher Williams Jr. for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[75]

New Orleans, Louisiana, this 14th day of February, 2011.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[75]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.